IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

THE BURLINGTON INSURANCE COMPANY                              PLAINTIFF

VERSUS                              CIVIL ACTION NO.  2:07cv127KS-MTP

BAL ENTERPRISES, LLC D/B/A COYOTES,
JULIA LAUDENSLAGER, PAMELA
CAMERON, DAVID CAMERON, SR.,
CRYSTAL CAMERON, AND
JOHN DOES 1-5                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Motion for Summary Judgment **[#72]** filed on behalf of The Burlington Insurance Company (hereinafter "Burlington").  The court, having reviewed the motion, the response, the briefs of counsel, the authorities cited, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted.  The court specifically finds as follows:

**ALLEGATIONS AND FACTUAL BACKGROUND**

The plaintiff, Burlington Insurance Company ("Burlington"), filed this insurance coverage action seeking a declaration that it has neither a duty to defend nor indemnify any party in connection with a state court lawsuit styled *Pamela Cameron, et al. v. BAL Enterprises, LLC, et al.*; Case No. CI05-0194; In the Circuit Court of Forrest County,

Mississippi. This action is brought under 28 U.S.C. § 2201 for declaratory relief and the court has jurisdiction pursuant to 28 U.S. C. § 1332(a) as this is a suit between citizens of diverse states and the amount in controversy exceeds the jurisdictional threshold of $75,000.00.  As such, Mississippi law is controlling.  *Erie R. Co. V. Tompkins*, 304 U.S. 64, 78-80 (1934); *Huss v. Gayden*, 465 F.3d 201, 205-06 (5th Cir. 2006).

The defendants Pamela Cameron, David Cameron, Sr., and Crystal Cameron (collectively "Claimants") filed the underlying action asserting wrongful death claims against BAL and Laudenslager arising from the death of David Cameron, Jr.  The Claimants allege that, on or about May 27, 2005, BAL and/or Laudenslager owned and operated a business known as Coyotes' Saloon, which held a license to sell, and did sell, alcoholic beverages.  They assert that Dustin Irwin ("Irwin") was a customer at "Coyotes," where despite his visible intoxication, BAL's employees or agents served him more than one drink.  The Claimants allege that Irwin left the bar while intoxicated with David Cameron, Jr. and later struck him with a car, resulting in David Cameron, Jr.'s death. The claimants allege David Cameron, Jr.'s death was proximately caused by BAL's and Laudenslager's negligence.

More specifically, they allege BAL and/or Launderslager were guilty of  negligent acts or omissions in failing to provide adequate security staff, admitting Irwin to the saloon when he was visibly intoxicated, serving alcoholic beverages to Irwin when he was visibly intoxicated, failing to prevent or discourage Irwin from leaving the business and driving a motor vehicle, failing to provide alternate transportation to Irwin, and failing to advise Cameron that he should not ride in a vehicle driven by Irwin.  They seek to recover $1,000,000, together with interest as allowed by law and all costs of

court in the underlying action.

Burlington is authorized to issue "surplus lines" policies of insurance in Mississippi as a non-admitted carrier.  Non-admitted or surplus lines carriers, such as Burlington, provide a supplemental insurance market for those who desire insurance coverage but are unable to obtain such coverage from an admitted carrier.  *See* Miss. Code Ann. § 83-21-23.

Mississippi insurance statutes impose restrictions on the issuance of policies by non-admitted carriers.  Non-admitted insurers are limited in their ability to market policies in the state.  Insurance agents may seek to obtain coverage for their clients from a non-admitted carrier only after they have made efforts to obtain coverage from an admitted carrier.  *See* Miss. Code Ann. § 83-21-23.  Thus, Burlington does not operate through local soliciting agencies in this state the way licensed insurers operate.  Instead, Burlington's representatives are authorized to issue policies in Mississippi only after they are approached by an insured's agent seeking surplus lines coverage in compliance with Mississippi law.

Relevant to this case, BAL sought insurance coverage through Anderson-Walker & Coker ("AWC"), an independent insurance agency located in Hattiesburg, Mississippi, and now known as the Nowell Agency.  Apparently, unable to procure coverage for BAL from an admitted carrier, AWC approached M. J. Kelly South, Inc. ("M. J. Kelly"), an insurance broker that was authorized to issue policies of liability insurance in Mississippi on Burlington's behalf.  After reviewing BAL's application for coverage, M. J. Kelly ultimately issued a Burlington policy of insurance to BAL.

It is undisputed that AWC did not have a direct contractual relationship with

Burlington, was not an authorized Burlington agent, and was not authorized to bind coverage or issue policies on Burlington' behalf. Instead, AWC could merely request the issuance of coverage from brokers such as M. J. Kelly. Further, unlike a captive soliciting agent that might be required to seek the issuance of a policy from one company, AWC was not limited to seeking coverage under a Burlington policy. In fact, under Mississippi's surplus lines statutes, AWC was required to first seek coverage for its client through a licensed insurer before seeking any coverage through the surplus lines market, whether from Burlington or otherwise. *See* Miss. Code Ann. § 83-21-23. Indeed, as both BAL and Laudenslager acknowledge in their pleadings (and consistent with Mississippi insurance statutes), AWC was acting as BAL's agent during the discussions between it and Burlington's representatives.

Ultimately, M. J. Kelly issued a Burlington commercial general liability policy (the "Policy") to BAL Enterprises d/b/a Coyotes with effective dates of March 12, 2005, to March 12, 2006, with limits of liability of $1,000,000.00. For purposes of this motion, Burlington has admitted that both BAL and Laudenslager are insureds under the policy. The Policy provides coverage for certain "occurrences" at the covered location. Under the terms of the Policy, Burlington agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." The Policy further provides that Burlington will have a "duty to defend" actions seeking such damages from the insured.

Through its motion for summary judgment, Burlington asks this court (1) to rule that Burlington has no duty to defend or indemnify any party in connection with the Underlying Action and (2) to dismiss with prejudice the counterclaims asserted by BAL

and Laudenslager against it.  Burlington argues that it is entitled to summary judgment regarding the duties to defend and indemnify because the operative pleading in the Underlying Action does not allege an occurrence as defined in the Policy and because the claims in that case are otherwise excluded from coverage by the Policy's Liquor Liability Exclusion and Aircraft, Auto or Watercraft Exclusion.  Burlington asserts that it is entitled to summary judgment on the counterclaims asserted against it based on its contention that it has not breached the policy of insurance and because BAL and Laudenslager cannot, as a matter of law, maintain misrepresentation claims against Burlington on these facts.

### ***STANDARD OF REVIEW***

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

Mississippi rules of construction of insurance policies was succinctly set forth in the Fifth Circuit case of *Centennial Insurance Company v. Ryder Truck Rental Inc.,* 149 F.3d 378 (5th Cir. 1998).  Those rules are as follows:

> First, where an insurance policy is plain and unambiguous the court must construe that instrument like other contracts, exactly as written. (Citation omitted).  Second, it reads the policy as a whole, thereby giving effect to all provisions.  (Citation omitted).  Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder.  (Citation omitted).  Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer.  (Citation omitted).  Fifth, when an insurance policy is subject to equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured.  (Citation omitted). Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer.  (Citation omitted).  Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible.  (Citation omitted).  Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.  (Citation omitted).

149 F.3d at 382-383.

## ANALYSIS

There is no contention that there is any ambiguity in the policy at issue, nor does the court ascertain any such ambiguity, thus the policy will be construed based on the plain meanings of the policy terms.  Burlington's primary assertion is  that there is no coverage for the actions complained of by the Claimants under the Policy because there was no "occurrence" to trigger coverage.

The policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  It does not define "accident."  However, the Mississippi courts and federal courts interpreting Mississippi law have had ample opportunity to review what "accident"

means in the exact context of the policy language at issue.  The Mississippi Court has held that an accident is something which "produces unexpected and unintended results" from the standpoint of the insured.  *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 719 (Miss. 2004).  Further, "the term accident refers to [the insured's] action and not whatever unintended damages flowed from the act." *ACS Const. Co., Inc. Of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003)(quoting *Allstate Ins. Co. v. Moulton*, 464 So.2d 507, 510 (Miss. 1985)). Further, the Mississippi court has clearly held that claims arising from intentional conduct that create foreseeable harm, regardless of the ultimate injury or damage, are not covered under the type of policy language at issue here.  *See USF&G v. Omnibank*, 812 So.2d 196, 201 (Miss. 2002).

    In the Underlying Action, the Claimants allege that, despite having actual knowledge that Irwin was intoxicated, Laudenslager and other BAL employees served Irwin one or more drinks and then failed to take any action to prevent him from leaving the premises.  The claimants concede that a portion of their state court complaint related to their assertions of serving alcohol to Irwin is conduct for which there is no coverage under this CGL Policy.  Instead, they counter with the negligence allegations of their complaint - specifically their claims of not providing adequate or trained security staff and in failing to prevent Irwin from leaving the saloon driving an automobile or in not providing him alternate transportation. They also contend that BAL was negligent in not advising Cameron not to get in a

vehicle with Irwin. However, even those claims are foreclosed by *Omnibank's* conclusion that "even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage." 812 So.2d at 197.

The hiring, training and supervision activities of BAL as well as the decision not to prevent Irwin's departure were certainly intended. The Claimants cannot make a credible argument that such were "accidental" or "unintended." They may certainly have been negligent, but that does not bring the conduct within the policy language. *See also American Guaranty and Liability Ins. Co. v. The 1906 Company*, 129 F.3d 802, 810 (5th Cir. 1997). Clearly, the claims set forth in the Claimants' state court complaint do not fit within the definition of an "occurrence" of the policy at issue and, thus, there is no coverage under this CGL Policy for those claims. If there is no coverage, there is no duty to defend. *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d at 719. ("A liability insurance company has . . . absolutely no duty to defend those claims which fall outside the coverage of the policy."). Further, since there is no coverage, there is no necessity in addressing the exclusions to coverage argued by Burlington.

Finally, Burlington argues that BAL and Laudenslager's claims for promissory estoppel, fraud, negligent misrepresentation, and intentional misrepresentation, which are all premised on the alleged statements by AWC regarding the coverage afforded by the Policy, must fail as a matter of law. The

court agrees and finds that there is no evidence that Burlington, either directly or through an agent, misrepresented the scope of coverage afforded by the Policy. There is no evidence of any representations made to BAL and/or Laudenslager by Burlington other than those contained in the Policy itself (which specifically provides that it contains the complete agreement between the parties).

Further, there is no evidence that BAL and/or Laudenslager reasonably relied on any representations by AWC that contradict the terms of the Policy or that there are any representations to support a claim of promissory estoppel, because there is no identifiable promise made by Burlington upon which they relied to their detriment. In fact, the Claimants do not respond to Burlington's motion on their counterclaims except by asserting that there is coverage and thus no necessity to offer proof of the counterclaims. Rule 56 requires more to survive a properly supported summary judgment motion.

## **CONCLUSION**

The court therefore finds that the Motion for Summary Judgment **[#72]** should be and is hereby granted and the court hereby declares that there is no coverage under the CGL Policy at issue for the actions complained of by the Claimants in their state court complaint nor is there a duty to defend Burlington's insured, BAL Enterprises and/or Julia Laudenslager against those allegations. This matter is dismissed with prejudice and any other pending motion is denied

as moot. A separate Judgment will be entered herein in accordance with Rule 58, Fed.R.Civ.P.

SO ORDERED AND ADJUDGED, this the 25th day of September, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE